# EXHIBIT B

# Complaint to Trans Union, LLC

COMMON PLEAS COURT
OF CUYAHOGA COUNTY, OHIO

Ca                                    CV 19 917534

Judge:  DAVID T MATIA

CV 19 917534

JULIE ANNE CHINNOCK
21482 Cromwell Avenue
Fairview Park, Ohio 44126,
Plaintiff

v.

VERIFIED COMPLAINT FOR INJUNCTIVE
RELIEF AND FOR CLAIMS FOR DEFAMATION
AND INVASION OF PRIVACY
WITH JURY DEMAND

EXPERIAN INFORMATION SOLUTIONS, LLC,
475 Anton Blvd. Costa Mesa, CA. 92626, and

TRANSUNION, 555 West Adams St.,
Chicago, Illinois 60661, and

EQUIFAX INFORMATION SERVICES, LLC
1550 Peachtree Street NW, Atlanta Georgia 30309
Defendants

NOW COMES plaintiff, Julie Anne Chinnock ("plaintiff"), who, being first duly sworn and being competent to testify, and whose testimony is admissible, deposes and says, from her own personal knowledge, under oath, for her Claims for Injunctive Relief and the torts of Defamation and Invasion of Privacy against defendants Experian Information Solutions, LLC ("Experian"), Equifax Information Services, LLC ("Equifax") and TransUnion ("TransUnion") (collectively "defendants Credit Reporting Agencies" or "defendants CRAs"), as follows:

1.    INTRODUCTION AND HISTORY

1

1. Prayer. This action seeks injunctive relief, compensatory damages, punitive damages, and reasonable attorney's fees against defendants CRAs for their commission of the torts of defamation and invasion of privacy against plaintiff.

2. Jurisdiction. This Court has jurisdiction over this matter under Ohio Revised Code 2307.382 (A) (1), (2), (3), (4) and (6) because defendants CRAs committed the torts of defamation and invasion of privacy against plaintiff in the State of Ohio. Venue is proper in this jurisdiction because plaintiff's domicile and permanent residence are in this judicial district and many of the facts relevant to this Complaint occurred in this judicial district. Ohio Civil Rule 4.3(A) grants authority for service of process outside the state.

3. Plaintiff Alleges No Violations of Federal Law. Plaintiff does not allege that defendants CRAs violated any federal laws, by commission or omission, in this case by their defamation and invasion of privacy of plaintiff.

4. Plaintiff's Ohio Domicile.   Plaintiff is a citizen of the United States. Plaintiff was born and raised in Ohio and has lived in Ohio as her domicile all of her life, presently in Fairview Park, Ohio.  Ohio is therefore plaintiff's domicile of birth and domicile of choice

     "In order to be a citizen of a state, a natural person must be both a citizen of the United States and be domiciled within the state." *Newman v. Alfonzo,* 490 U.S. 826, 828 (1989). The question of domicile is primarily a matter of intent." *Cleveland v. Surella*, 51 Ohio App.3d 302, 304 (Cuyahoga App. 1989). "Domicile is the place where one has her true, fixed, permanent home and principal establishment and to which, whenever she is absent, she has the intention of returning." *District of Columbia v. Murphy*, 314 U.S. 441, 451 (1941). "Domicile is largely a question of intention." 28 C.J.S. 45, 55, Domicile, secs. 2, 15.

"An individual can only have one domicile, and she does not have to be physically present in her domicile in order to keep the same." *Crisp v. Industrial Comm.*, 2012-Ohio-207. The motive behind the intent to establish a domicile is immaterial. *Williamson v. Osenton*, 232 U.S. 619, 625 (1914).

5. Plaintiff's Permanent Ohio Residence. Plaintiff's domicile is also her permanent Ohio residence. "A person may have more than one residence although she can have only one domicile." *Grant v. Jones,* 39 Ohio St. 506, 515 (1883); *Eastman v. University,* 30 F.3d 670, 673 (6th Cir. 1994); *Estate of Quick,* 2004-Ohio-4434, para 23 (2004); Am. Jur.2nd 201, Domicile, 201, Domicile sec. 9; 36 Ohio Jur.3d (1982).

"The intention of a person is the significant factor in determining where she legally resides." *Prouse v. Dimarco,* 116 Ohio St.3d 167, 170 (2007); *Barth v. Barth,* 113 Ohio St. 3d 27 (2007). "Residence means living in a particular locality, [but without the intent to make it a fixed and permanent home.]" *Black's Law Dictionary* (6th Ed. 1990); *Estate of Quick,* supra.

Plaintiff has a temporary residence in Seattle, Washington, for purposes of employment, while her domicile and permanent residence are, always have been, and are intended to always be, Cleveland, Ohio.

6. Plaintiff's Unblemished 30-Year Credit Record.  Over a period of 30 years, from 1987 to 2017, plaintiff studiously pursued her professional education by securing scores of student loans which she repaid on a regular basis over a period of more than three decades, perfecting and maintaining an unblemished credit record by repaying hundreds of thousands of dollars to student-loan-lenders-collectors ("SLLCs"). Not a single delinquency was ever incurred by plaintiff on her repayment of hundreds of thousands of dollars of student loans over the 30-year period.

3

7. 2016 National Student Loan Crisis. This case derives from a National Crisis -- the 2016 National Student Loan Crisis, a national disgrace which affects many millions of Americans, comparable to the millions of Americans who suffered devastating financial losses in the 2008 National Mortgage Fraud Crisis and the millions of Americans who are now suffering in the 2018 National Opioid Crisis.

Forty-five million Americans are carrying a burden of student loan debt totaling $1.57 trillion (with a "T"), which prevents them from buying a home and/or starting a family, thereby injuring their families and the American economy. That sum is $521 billion more than the total credit card debt in the United States! Across the United States, one million Americans default on student loans every year. Experts predict that within the next five years, 40% of student-loan borrowers will necessarily default on their student loans, resulting in the next economic recession in America, which will severely harm our country and its citizens.

8. The National Student Loan Program, Enacted for the Benefit of America's Students, is Today Owned and Operated by the Loan-Collection Industry. The National Student Loan Crisis is the direct result of a covetous action of the federal government to benefit the loan-collection industry. Its initial purpose was to provide loans for the educational benefit of America's students, not for the benefit of the loan-collection industry, but in 2014 it was privatized for the benefit of the loan-collection industry by turning it over to private for-profit legal entities, such as Navient Corporation and Navient Solutions, LLC (collectively "Navient"), a gigantic student loan bill-collection agency that, throughout Ohio and the United States, engages in the epic collection of $300 billion in student loans on 12 million student-loan accounts under contract with the U. S. Department of Education.

9. Government Agencies Report That SLLCs Fraudulently Attempt to Collect Loans They Do Not Own. Between 2014 and 2017, both federal and state

4

government agencies reported to the public that some SLLCs, such as Navient, involved herein, fraudulently attempt to collect student loans that they do not own.

A 2014 Federal Consumer Finance Protection Bureau Report uncovered systematic illegal practices in the student loan collection industry, evidenced by tens of thousands of complaints from student loan borrowers that certain SLLCs, such as Navient, fraudulently and illicitly attempt to collect loans that they do not own, which is the initial underlying issue in this case, together with the false and defamatory publications made by defendant CRAs.

Such predatory collection practices are also featured in an article entitled "Student Borrowers: Prey for Predatory Loan Servicers," which appeared in the official Ohio publication *Policy Matters Ohio* (Dec 26, 2017). These are the same predatory collection practices (i.e., robo-signing of fraudulent documents) that caused the 2008 National Mortgage Fraud Crisis.

10. SLLCs Ignore Plaintiff's Multiple Pre-Litigation Demands for Them to Verify They Own the Student Loans They Claim They Own. Between 2016 and 2018, plaintiff made multiple written and oral demands upon the SLLCs to verify that they own the loans they claim they own, and under which they claim plaintiff is indebted to them, as required by the 2007 Judge Boyko cases. In these seminal cases, Cleveland Federal Judge Christopher Boyko decreed that where the alleged owners of [homeowner] loans cannot prove they own the loans that they claim they own, by producing assignment documents and chain-of-title certificates to the Court, then, as a matter of law, they do not own the loans, and the alleged borrowers are not indebted to them. *In Re Foreclosure Cases*, 2007 WL 3232430, Cases # 07CV2282 et al. (N.D. Ohio, Oct. 31, 2007).

Every demand made by plaintiff for the SLLCs to prove their loan ownership

has been ignored, contrary to the binding precedent of the Boyko cases, even though SLLCs demand payment from plaintiff on such unproven loans.

11. <u>SLLCs Engage in Major Delay Tactics to Avoid Having to Prove Ownership of Student Loans They Claim They Own, by Removing Plaintiff's Declaratory Judgment Cases from State Court to Federal Court – Twice</u>. Between March 28, 2018, and April 22, 2019, plaintiff filed two separate cases in this Cuyahoga County Common Pleas Court, praying for a declaratory judgment to determine whether the SLLCs own the loans they claim they own and under which they claim plaintiff is indebted to them, by producing documentary proof of ownership of such loans, i. e., either copies of promissory notes made payable to them, or assignment and chain-of-title documents showing their ownership by assignment. [State Cases #18-cv-895292 and #18-cv-907181]

In order to avoid having to prove their ownership of such loans, and for purposes of substantial delay, the SLLCs removed each state case to the federal court, which focused entirely on the issue of jurisdiction, and never reached the issue of ownership, because of the appropriate dismissal of each case for lack of jurisdiction. [Federal Cases #1:18-cv-10009 and 1:18-cv-02935]

12. <u>The Federal Court's Dismissals for Lack of Jurisdiction Prohibit the Admission in This Case of Any Testimony or Rulings in the Federal Cases.</u> It is reasonably anticipated that defendants CRAs, in a further attempt to delay a predictable outcome in this case, will attempt to divert the attention of this Court to inadmissible matter from the federal cases in which both dismissal rulings were based on lack of jurisdiction. Such "no jurisdiction" dismissals, as a matter of law, prohibit references to or the admission of any testimony or ruling of the federal court, other than its final rulings that the court lacks jurisdiction of the case. "A dismissal without prejudice leaves the parties as if the action had not been

6

brought at all." *Deville v. Bowers,* 169 Ohio St. 267, 272 (1959); *Stafford v. Hetman,* Cuyahoga No. 72825, 1998 WL 289383 (1998). Under Ohio law, the dismissal of an action without prejudice dissolves all orders rendered by the trial court during the pendency of the action. *Krug v. Bishop,* 44 Ohio St. 221, 224 (1886); *Wade v. Lima,* 28 N.E.3d 161, 168 (Ohio App. 2015), citing Ohio appellate cases from a half-dozen Ohio counties [Cuyahoga, Franklin, Stark, Summit, Lucas, and Allen].

``    Plaintiff respectfully moves this Court to automatically strike from the record any such testimony or evidence offered by defendants CRAs from the federal cases and to hold that any such offerings are frivolous and subject to sanctions, because as a matter of law such evidence is inadmissible. [Rule of Inadmissibility of Evidence from  Prior Proceedings , Even If Between Same Parties] 29 Ohio Jur.2d 205, Evidence, sec 888. "Courts are to decide a case only on evidence in that particular case." 29 Am.Jur.2d 33, Evidence, sec 3

`    13. Plaintiff Establishes a Good Faith Trust Account, Into Which She Deposits $1,800 a Month, and Stops Making Payments to the SLLCs on Loans on Which She Does Not Owe. In late 2018, plaintiff advised the SLLCs that until they prove they own the loans they claim they own and under which they claim plaintiff is indebted to them, she will not continue paying them on such loans, but rather, in good faith, will establish a joint-escrow trust account with them into which she will make monthly payments in the sum that the SLLCs allege that she owes on the purported student loans. i.e., $1,800 per month, with the condition that such funds will be paid to the SLLCs if and when they submit their proof of ownership of such loans to the Court in Judge Sutula's case [#180-cv-907181].

`    The SLLCs refused to establish such a good faith joint-escrow account with plaintiff and advised plaintiff that unless she continued to make payments directly

to them, they would have defendants CRAs publish her loans as being delinquent, which would ruin her 30-year unblemished credit record. On December 7, 2018, plaintiff, in order to demonstrate her good faith, established the trust-escrow account independently of the SLLCs and began making deposits of $1,800 per month into such account, which she continues to do to this day.

`` Judge John Sutula scheduled an injunction hearing for December 27, 2018, to determine whether or not the SLLCs can prove their ownership of their purported loans, in order to determine whether they have the right to have the defendants CRAs publish such loans as being "delinquent." Shortly before the injunctive relief hearing, however, the SLLCs again removed the case to the federal court for the second time.

14. Plaintiff's First Fair Warning Notice to Defendant CRAs That the Ownership of the Student Loans is in Dispute and That Defendants CRAs, Therefore, Must Refrain from Publishing False Statements of "Delinquencies" on Plaintiff's Credit Record. On December 12, 2018, plaintiff provided defendants CRAs with copies of verified and uncontroverted legal pleadings in Cuyahoga County Common Pleas Court Case # 18-cv-907181, verifying that the ownership of the student loans in this case is legally in dispute. Plaintiff's Fair Warning Notice to defendants CRAs further advised them that there is "good cause to believe that such purported student loan collectors may attempt to report to them that plaintiff is delinquent in making payment to them on such loans, the ownership of which is in legal dispute, rendering any such reports fictitious and fraudulent." Plaintiff further advised defendants CRAs that if they "specify any such purported delinquencies on [plaintiff' credit record], they would be subject to suit." Exhibit "A" attached.

15. <u>Plaintiff's Second Fair Warning Notice to Defendants CRAs That the</u>
<u>Ownership of the Student Loans is in Dispute and That Defendants CRA's,</u>
<u>Therefore, Must Refrain From Publishing False Statements of "Delinquencies" on</u>
<u>Plaintiff's Credit Record.</u> Again, on January 31, 2019, plaintiff provided to
defendants CRAs her "NOTICE OF FAIR WARNING INTENTION TO FILE
LITIGATION FOR DEFAMATION" (emphasis in the original), advising them
that "the purpose of this communication is to give fair notice that any such attempt
by SLLCs to report to your agency that [plaintiff] is delinquent in making payment
on such disputed loans will be met by [litigation]. Should your agency specify any
such purported delinquency on [plaintiff's] credit record, [plaintiff will pursue
litigation]. <u>Exhibit "B" attached.</u>

16. <u>Defendants CRAs Failure to Perform Their Trio of Legal Duties Before</u>
<u>Publication.</u> Plaintiff's Fair Warning Notices to defendants CRAs highlighted the
trio of legal duties placed upon them before they could legitimately make
publication of such "delinquent" loans, namely, their legal duties to conduct
reasonable investigations to determine (a) whether or not the SLLCs own the loans
they claim they own; (b) whether or not plaintiff is indebted to the SLLCs under
such loans; and (c) whether or not plaintiff is delinquent in paying on such loans.

`` The only possible way in which defendants CRAs could legitimately
determine that the SLLCs own the loans they claim they own is for them to
demand and receive from the SLLCs either (a) copies of promissory notes made
payable directly to them, or (b) assignment and chain-of-title documents
evidencing the assignment of such loans from the original owners of the
promissory notes to them.

` But defendants CRAs failed to conduct such reasonable investigations. Upon
receiving plaintiff's Fair Warning Notices, defendants CRAs simply performed a

reinvestigation identical to their first investigation, but did nothing further. Although plaintiff's Fair Warning Notices had attached thereto verified and uncontroverted legal pleadings and sworn affidavits in the state and federal court proceedings verifying that the ownership of the student loans in this case is legally in dispute ("undisputed evidence"), defendants CRAs neither provided such documents to nor confronted the SLLCs with such uncontroverted proof that they do not own the disputed loans. Defendants CRAs did not have reasonable grounds to believe that plaintiff's Fair Warning Notices were frivolous or irrelevant.

If defendants CRAs had considered such undisputed proof or provided the SLLCs with such undisputed proof, as a matter of law they would have had to hold the SLLCs information to be inaccurate and false, and would have had to delete from plaintiff's credit records their published statements (a) that the SLLCs own the disputed loans; (b) that plaintiff is indebted to the SLLCs under the disputed loans, and (c) that plaintiff is delinquent on the disputed loans.

Defendants CRAS failed to provide plaintiff with any information regarding its original investigation or its reinvestigation procedures.

It is fair to conclude, therefore, that defendants CRAs essentially colluded with the SLLCs.

## II. DEFAMATION

17. <u>Incorporation of Prior Provisions</u>. Plaintiff repeats all allegations specified in paragraphs 1 through 16, as though the same were fully set forth herein.

18. <u>Defendants CRAs Have Committed the Tort of Defamation Against Plaintiff.</u> Before defendants CRAs published false and defamatory statements about plaintiff in early 2019, she was, for many years had been, and now is a medical professional who had obtained an excellent reputation in her profession, and had at all times the

respect of her friends, companions, associates, and neighbors in all social and professional relationships. In early 2019, however, defendants CRAs willfully and maliciously, or, at a minimum, negligently, committed the tort of defamation against plaintiff by publishing the false, derogatory, and defamatory statements that plaintiff is indebted to and delinquent upon student loans they owe to the SLLCs, without fully disclosing to the public, and in fact concealing from the public, the facts that (a) defendants CRAs had public knowledge that some SLLCs, such as Navient, fraudulently attempt to collect student loans that they do not own, and (b) defendants CRAs had private knowledge, in the form of verified and uncontroverted documents and sworn testimony, that the SLLCs do not own the student loans they claim they own and according to which they claim plaintiff is indebted to them.

Defendants CRAs published scores of false, derogatory, and defamatory statements that plaintiff's "student loans are delinquent," thereby destroying her 30-year unblemished credit rating by reducing her FICO score from 717 (good) to 573 (poor). ["120 days past due." ["Past due 150 days."] ["At least 120 days past due"]. Exhibits "C" and "C-1" thru "C-17".

Each of the defamatory publications by defendants CRAs constitutes a separate tort for which separate damages may be awarded.

19. Defendants CRAs Fail to Retract False Publications and Mitigate the Injuries They Caused to Plaintiff. In early June, 2019, plaintiff gave defendants CRAs an opportunity to mitigate the injuries they caused by retracting the scores of false and fraudulent publications they had made over the past five months on plaintiff's credit record. Defendants CRAs not only refused to avail themselves of that opportunity, but actually continued to publish the fraudulent delinquency statements to millions of Ohio citizens and citizens throughout the United States.

20. <u>Defendants CRAs' False Publications Are Deemed to be Derogatory and Defamatory.</u> The statements caused by the CRAs to be published on plaintiff's credit record are, at a minimum, capable of being understood as derogatory and defamatory, because the plain and ordinary meaning of the words could reasonably be understood by an average person of ordinary intelligence to be derogatory and defamatory.

21. <u>Defendants CRAs' Publications Constitute Defamation *Per Se.*</u> The false, derogatory, and defamatory statements published by the CRAs on plaintiff's credit record constitute *defamation per se,* because such statements are defamatory on their face and obviate the necessity of alluding to extrinsic facts to demonstrate their injurious meaning and effect. Because the publications were libelous on their face, the law presumes that she suffered such damages as naturally and ordinarily flow from such false publication.

Because the statements are *defamatory per se*, malice and general damages are presumed, as a matter of law, to be the natural, proximate, and necessary result of the defamatory statements, and such damages are not less valid or recoverable by reason of the difficulty in their valuation and therefore uncertainty in the amount of a jury's award to plaintiff.

22. <u>Defendants Acted With Both Malice and Actual Malice.</u> Defendants CRAs failed to act in good faith, and in fact acted in bad faith, because they had both public information and private information from which they should have reasonably suspected that the statements they published were false.

Defendants CRAs acted with malice and actual malice, because (a) they unreasonably failed to attempt to discover the truth or falsity of their published statements; (b) they acted with guilty knowledge of the false nature of the statements, knowing, but failing to disclose to the public, and, in fact, concealing

12

from the public, the fact that the ownership of the debts is legally in dispute; (c) they engaged in a reckless disregard of the consequences to plaintiff of such false statements; despite knowing that the statements would convey a defamatory message;  (d) they acted with reckless disregard of the truth or falsity of the statements; and (e) they refused to mitigate the injuries they caused by retracting the false statements when plaintiff gave them an opportunity to do so.

23. Defendants CRAs False and Defamatory Statements Attacked Plaintiff's Integrity and Her Unblemished 30-Year  Record of Paying Her Just Debts. The false, derogatory, and defamatory statements published by defendants CRAs on plaintiff's credit record were such as to be understood by average persons of ordinary intelligence to mean that plaintiff had failed and refused to pay her just and lawful debts, thereby injuring her personal and professional reputation with the public, with creditors, and with others.

    Defendants CRAs' publications attacked plaintiff's integrity, imputed her insolvency, injured her feelings, diminished the respect in which she was held by the public, by persons who know her, by her employers, and by her professional colleagues and associates, and exposed her to financial injury with present and future creditors.

24. Summary Re Defamation. By way of summary of plaintiff's claim against defendants CRAs for defamation against her, she states that they committed the tort of defamation against her, because: (a) they published false, derogatory, and defamatory statements on her credit record, falsely asserting that she owed student loans upon which she was delinquent; (b) they published such false statements despite the fact that they had both public knowledge and private knowledge that the SLLCs have failed and refused to prove that they own the student loans which they claim they own and under which they claim  plaintiff is indebted to them; (c)

such statements are defamatory *per se;* (d) such defamatory statements were published to persons and other entities who or which have read or will read plaintiff's credit reports; (e) such persons and other entities reasonably understood the statements to refer to plaintiff; and (f) such statements injured and continue to injure plaintiff's personal and professional reputation and have resulted and continue to result in other damages.

25. Punitive Damages. Because defendants CRAs' false and defamatory publications were malicious, unwarranted, totally without justification or excuse, and made with such recklessness, carelessness and gross negligence as to amount to a wanton disregard of the rights of plaintiff, and indifference to the infliction of injury to plaintiff and a total disregard of the consequences of the publications, plaintiff is entitled to punitive damages.

26. Plaintiff Alleges No Violations of Federal Law. Plaintiff does not allege that the defendant CRAs violated any federal laws, by commission or omission, by committing the tort of defamation against her.

### III.   INVASION OF PRIVACY

27. Incorporation of Prior Provisions. Plaintiff repeats all allegations specified in paragraphs 1 through 26, as though the same were fully set forth herein.

28. Public Policy. There is a public policy interest in plaintiff's right of privacy.

29 . Plaintiff's Right to Be Left Alone is Violated by the Defendants CRAs. Plaintiff has the right to be left alone and to be free from undue publicizing of her private affairs, including her financial dealings and debts, with which the public has no legitimate concern.

30. Defendants CRAs Invaded Plaintiff's Right of Privacy. Defendants CRAs invaded plaintiff's right of privacy even if the statements published by them were true, which they are not, but it is especially invaded if the statements are false, which they are. Defendants CRAs willfully and maliciously, or at a minimum, negligently, committed the tort of invasion of privacy against plaintiff by disclosing to the public, without her consent, her private affairs, including her financial dealings. Each of the invasions of privacy by defendants CRAs constitutes a separate tort for which separate damages may be awarded.

31. Defendants CRAs Destroyed Plaintiff's Unblemished 30-Year Credit Record. Plaintiff is a private citizen and not a public figure, and the standard of proof for defendant CRAs' liability is simple negligence. Defendants CRAs were, at a minimum, negligent in that (a) they failed to fully disclose to the public, and instead concealed from the public, for whose reading the statements were published, the fact that the ownership of the loans is in dispute; (b) they had both public knowledge and private knowledge that the SLLCs failed and refused to prove that they own the loans they claim they own and according to which they claim plaintiff is indebted to them. Defendants CRAs published scores of false, derogatory and defamatory statements that plaintiff's "student loans are delinquent," thereby destroying her 30-year unblemished credit rating by reducing her FICO score from 717 (good) to 573 (poor). ["120 days past due." ["Past due 150 days."] ["At least 120 days past due"]. Exhibits "C" and "C-1" thru "C-17".

32. Defendants CRAs' Publication of Plaintiff's Private Information. Defendants CRAs violated plaintiff's right to privacy by publishing private information about her, which is not readily available to the public, and which was disclosed and publicized to persons and other entitles who or which accessed her credit reports and also to other members of the public.

15

33. Defendants CRA's Invasion of Plaintiff's Privacy is Offensive to Reasonable Persons. The publicizing of plaintiff's private affairs by defendants CRAs would be offensive and objectionable to reasonable persons of ordinary sensibilities.

34. Plaintiff Suffered Emotional and Mental Injuries. The acts and omissions of defendant CRAs in publicizing plaintiff's private affairs to the public caused her emotional and mental suffering, including anguish, shame and humiliation, just as they would cause such injuries to any person of ordinary sensibilities.

35. Summary Regarding Defendants CRAs Invasion of Privacy of Plaintiff. By way of summary of plaintiff's claim against defendants CRAs for invasion of her privacy, plaintiff states that defendants CRAs committed the tort of invasion of privacy against her by publicizing her private affairs to the public, with which the public has no legitimate concern, causing her emotional and mental suffering, including anguish, shame and humiliation, just as they would cause such injuries to any person of ordinary sensibilities.

36. Punitive Damages. Because defendants CRAs' invasions of plaintiff's privacy were malicious, unwarranted, and totally without justification or excuse, and made with such recklessness, carelessness and gross negligence as to amount to a wanton disregard of the rights of plaintiff, an indifference to the infliction of injury to plaintiff, and a total disregard of the consequences of such invasions of privacy, plaintiff is entitled to punitive damages.

37. Plaintiff Alleges No Violations of Federal Law, Plaintiff does not allege that defendants CRAs violated any federal laws, by commission or omission, by committing the tort of invasion of privacy against her.

16

## IV. PRAYER

38. <u>Injunctive Relief.</u> Plaintiff prays for injunctive relief in the form of preliminary and permanent injunctions prohibiting defendants CRAs from publishing the false, derogatory, and defamatory statements that plaintiff is indebted to the SLLCs because of student loans and is delinquent in paying on such loans, unless the SLLCs and defendants CRAs can prove to the Court, under the Boyko cases precedent, supra, that the SLLCs own the student loans they claim they own and according to which they claim plaintiff is indebted to them.

Plaintiff prays, further, that the Court order defendants CRAs to re-institute plaintiff's FICA score to the position that it was before they published the defamatory statements about her.

39. <u>Defamation.</u> On the tort of defamation, plaintiff prays for general damages and punitive damages in excess of $25,000 as the jury may determine.

40. <u>Invasion of Privacy.</u> On the tort of invasion of privacy, plaintiff prays for general damages and punitive damages in excess of $25,000 as the jury determines.

41. <u>Legal Interest.</u> Plaintiff prays for interest on damages awarded, at the legal rate, from the date of publication until paid.

42 . <u>Attorney's Fees, Costs and Further Relief.</u> Plaintiff prays for reasonable attorney's fees against defendants CRAs, for costs of suit, and for such other and further legal and equitable relief as the jury and/or the Court determine to be fair and equitable.

<div align="center">

PLAINTIFF DEMANDS A TRIAL BY JURY
ON ALL ISSUES SO TRIABLE

</div>

FURTHER AFFIANT SAYETH NAUGHT.

Julie Anne Chinnock

JURAT

Julie Anne Chinnock came before me, a Notary Public in Seattle, Washington on the 24 day of June, 2019, and executed this document of her own free act and will.

Notary Public

Notary Public
State of Washington
Nicholas J Hartford
Commission No. 172716
Commission Expires 07-18-2022

Respectfully submitted,

/s/ William F. Chinnock, Esq. #10762
8238 Sugarloaf Road
Boulder, Colorado 80302
720-504-6655
judgewfc@aol.com

18

William F. Chinnock, Esq.
8238 Sugarloaf Road
Boulder, Colorado 80302
judgewfc@aol.com
720-504-6655

December 12, 2018

Chief Legal Counsel
Experian / P. O. Box 9701
Allen, TX 75013
and
Chief Legal Counsel
Equifax/ P.O. Box 740256
Atlanta, GA. 30374-0256
and
Transunion / P.O. Box 2000
Chester, PA 19016

Re: Chinnock v. Navient
Cuyahoga County Common Pleas Court
Case # 18-cv-907181

Dear Chief Legal Counsel:
Enclosed please find copies of the Verified Complaint and First Amended Complaint in
the above-specified case, in which my client, plaintiff Julie Anne Chinnock (SS # 281-62
0123) (dob 7-18-69), challenges defendants' claims that they own eight (8) student loans
under which they claim plaintiff is indebted to them.

As can readily be seen from the pleadings, ownership of such loans are legally in dispute.

Nevertheless, there is good cause to believe that defendants may shortly attempt to report
to the credit reporting agencies that plaintiff is delinquent in making payment to them on
such loans – the ownership of which are in legal dispute – rendering any such report to be
fictitious and fraudulent.

The purpose of this communication is to give fair notice that any such attempt by
defendants to report to your agency that my client is delinquent in making payment on
such disputed loans will be met by the filing of an Amended Complaint for Defamation.
And should your agency specify any such purported delinquency on my client's credit
record, such pleading will join your credit reporting agency as a defendant in the action,
seeking damages therefor.

Please acknowledge receipt of this notice and the action you have taken to insure against
any such fraudulent delinquency report.

Thank you for your cooperation in this matter
William F. Chinnock, Esq.
Ohio Supreme Court #10762



William F. Chinnock, Esq
8238 Sugarloaf Road
Boulder, Colorado 80302
judgewfc@aol.com
720-504-6655

Jan 31, 2019

Chief Legal Counsel
Experian / P. O. Box 9701
Allen, TX 75013
and
Chief Legal Counsel
Equifax/ P.O. Box 740256
Atlanta, GA.  30374-0256
And
Chief Legal Counsel
Transunion / P.O. Box 2000
Chester, PA 19016

Re: Chinnock v. Navient, Experian,
Equifax , Transunion, et al

BY EXPRESS OVERNIGHT MAIL

## NOTICE OF FAIR WARNING  INTENTION TO FILE LITIGATIONT FOR DEFAMATION

Dear Chief Legal Counsel:

Enclosed please find my communication to you dated December 12, 2018.

The communication directed to your Chief Legal Counsel is quite explicit and was accompanied by court legal documents verifying that the ownership of certain loans alleged to be owned by Navient and the United States Department of Education are in dispute in litigation in the state and federal courts.

The communication gives fair warning that if defendants to report to your agency that my client is delinquent in making payments on such disputed loans, and if your agency publishes any such purported delinquencies on my client's credit record, additional litigation will be filed, joining your credit reporting agency as a defendant in a defamation action, seeking substantial damages therefore.

The communication requests your agency to acknowledge receipt of the fair warning notice and to specify the action you have taken to ensure against any such fraudulent delinquency reports.

Your response to such communication was vague, nonresponsive, and less than satisfactory.

This communication constitutes a final fair warning that if your agency publishes any such fraudulent delinquency on the credit report of Julie Anne Chinnock in regard to these disputed loans, your agency will be required to defend in court such fraudulent publication.

Thank you for your anticipated cooperation in this matter. Please advise.

Very truly yours,
William F. Chinnock, Esq
Ohio Supreme Court #10762

## SUMMARY OF CREDIT REPORTING AGENCIES PUBLISHING
## ACCOUNTS OF PLAINTIFF AS BEING DELINQUENT
### As of JUNE 20, 2019

### TRANSUNION

| Exhibit # | Date Account Opened | Delinquent Payment Status |
|---|---|---|
| C-1 | Nov 2003 | 120 days past due |
| C-2 | March 2012 | 120 days past due |
| C-3 | August 2013 | 120 days past due |
| C-4 | May 2014 | 120 days past due |
| C-5 | Jan 2015 | 120 days past due |
| C-6 | Jan 2015 | 120 days past due |

### EXPERIAN

| | | |
|---|---|---|
| C-7 | March 2012 | past due 120 days |
| C-8 | Aug 2013 | past due 120 days |
| C-9 | May 2014 | past due 120 days |
| C-10 | Jan 2015 | past due 120 days |
| C-11 | Jan 2015 | past due 120 days |

### EQUIFAX

| | | |
|---|---|---|
| C-12 | Nov  2003 | at least 120 days past due |
| C-13 | March 2012 | at least 120 days past due |
| C-14 | Aug 2013 | at least 120 days past due |
| C-15 | May 2014 | at least 120 days past due |
| C-16 | Jan 2015 | at least 120 days past due |
| C-17 | Jan  2015 | at least 120 days past due |

6/18/2019

JULIEANNE A CHINNOCK - TransUnion
Date of Report: Jun 18 2019



NAVIENT
000820XXXXXXXXXXXX

 

| ACCOUNT DETAILS | | CONTACT INFORMATION |
|---|---|---|

**ACCOUNT DETAILS**

| | |
|---|---|
| Account Name | NAVIENT |
| Account # | 000820XXXXXXXXXXXX |
| Original Creditor | |
| Company Sold | |
| Account Type | INSTALLMENT |
| Date Opened | Nov 2003 |
| Account Status! | Open |
| Payment Status | 120 days past due |
| Status Updated | May 2019 |
| Balance | $165,202 |
| Balance Updated | May 31, 2019 |
| Original Balance | $0 |
| Monthly Payment | $1,267 |
| Past Due Amount | $7,610 |
| Highest Balance | $132,613 |
| Terms | 195 Months |
| Responsibility | Individual account |
| Your Statement | |
| Comments | Dispute resolved: customer disagrees |

**CONTACT INFORMATION**

PO BOX 9500
WILKES BARRE, PA 18773
(888) 272-5543

**PAYMENT HISTORY**

| | 2019 | | | | 2018 | | | | 2017 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| | May | Jun | Jul | Aug | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

■ OK    ■ 120+ Days Late
■ 90 Days Late

C-1

6/18/2019

https://usa.experian.com/#/print/transunion/20190618215743706 2

JULIEANNE A CHINNOCK - TransUnion
Date of Report: Jun 18, 2019



TransUnion.



**DPT ED/NAVI**
557551XXXXXXXXXXXX

**Open**

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DPT ED/NAVI |
| Account # | 557551XXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Mar 2012 |
| Account Status! | Open |
| Payment Status | 120 days past due |
| Status Updated | May 2019 |
| Balance | $7,025 |
| Balance Updated | May 31, 2019 |
| Original Balance | $0 |
| Monthly Payment | $53 |
| Past Due Amount | $318 |
| Highest Balance | $15,783 |
| Terms | 099 Months |
| Responsibility | Individual account |
| Your Statement | - |
| Comments | Dispute resolved; customer disagrees |

## CONTACT INFORMATION

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5543

### PAYMENT HISTORY

**2019**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2018**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2017**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2016**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2015**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK
90 Days Late
120+ Days Late


C-2

6/18/2019

https://usa.experian.com/#/print/transunion/20190618215T437062

JULIEANNE A CHINNOCK - TransUnion
Date of Report: Jun 18, 2019

 TransUnion



**DPT ED/NAVI**
**557551XXXXXXXXXXXXX**

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DPT ED/NAVI |
| Account # | 557551XXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Aug 2013 |
| Account Status! | Open |
| Payment Status | 120 days past due |
| Status Updated | May 2019 |
| Balance | $21,442 |
| Balance Updated | May 31, 2019 |
| Original Balance | $0 |
| Monthly Payment | $159 |
| Past Due Amount | $954 |
| Highest Balance | $20,500 |
| Terms | 145 Months |
| Responsibility | Individual account |
| Your Statement | - |
| Comments | Dispute resolved; customer disagrees |

### CONTACT INFORMATION

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5543

### PAYMENT HISTORY

**2019**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2018**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2017**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2016**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

OK     120+ Days Late

90 Days Late

C-3

JULIEANNE A CHINNOCK - TransUnion
Date of Report: Jun 18, 2019





**DPT ED/NAVI**
557551XXXXXXXXXXX



## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DPT ED/NAVI |
| Account # | 557551XXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | May 2014 |
| Account Status‡ | Open |
| Payment Status | 120 days past due |
| Status Updated | May 2019 |
| Balance | $21,442 |
| Balance Updated | May 31, 2019 |
| Original Balance | $0 |
| Monthly Payment | $159 |
| Past Due Amount | $954 |
| Highest Balance | $20,500 |
| Terms | 150 Months |
| Responsibility | Individual account |
| Your Statement | - |
| Comments | Dispute resolved; customer disagrees |

## CONTACT INFORMATION

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5543

### PAYMENT HISTORY

**2019**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2018**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2017**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2016**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

☐ OK
☐ 90 Days Late
■ 120+ Days Late

Summary    Accounts (Open)    Collections    Inquiries    Public Records    Credit Score

C-4

6/18/2019

JULIEANNE A CHINNOCK - TransUnion
Date of Report: Jun 18, 2019

https://usa.experian.com/#/print/transunion/201906182157437062





DPT ED/NAVI
557551XXXXXXXXXXXX

**ACCOUNT DETAILS**

| | |
|---|---|
| Account Name | DPT ED/NAVI |
| Account # | 557551XXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Jan 2015 |
| Account Status! | Open |
| Payment Status | 120 days past due |
| Status Updated | May 2019 |
| Balance | $21,737 |
| Balance Updated | May 31, 2019 |
| Original Balance | $0 |
| Monthly Payment | $159 |
| Past Due Amount | $954 |
| Highest Balance | $20,500 |
| Terms | 156 Months |
| Responsibility | Individual account |
| Your Statement | - |
| Comments | Dispute resolved; customer disagrees |

**CONTACT INFORMATION**

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5543

**PAYMENT HISTORY**

| 2019 | | | | 2018 | | | | 2017 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

| 2016 | | | |
|---|---|---|---|
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK
20+ Days Late
0 Days Late

C-5

6/18/2019

JULIEANNE A CHINNOCK - TransUnion
Date of Report: Jun 18, 2019

https://usa.experian.com/#/print/transunion/201906182157437062



**DPT ED/NAVI**
557551XXXXXXXXXXX



Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DPT ED/NAVI |
| Account # | 557551XXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Jan 2015 |
| Account Status! | Open |
| Payment Status | 120 days past due |
| Status Updated | May 2019 |
| Balance | $4,998 |
| Balance Updated | May 31, 2019 |
| Original Balance | $0 |
| Monthly Payment | $35 |
| Past Due Amount | $215 |
| Highest Balance | $11,535 |
| Terms | 084 Months |
| Responsibility | Individual account |
| Your Statement | - |
| Comments | Dispute resolved; customer disagrees |

## CONTACT INFORMATION

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5543

## PAYMENT HISTORY

**2019**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2018**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2017**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2016**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

OK    20+ Days Late
90 Days Late

---

Summary | Accounts (Open) | Collections | Inquiries | Public Records | Credit Score

C-6

6/18/2019

JULIE ANNE CHINNOCK - Experian
Date of Report: Jun 18, 2019

https://usa.experian.com/#/print/experian/201906182157437062






**DEPT OF ED/NAVIENT**
934655XXXXXXXXXXXXXXXX

Open

## ACCOUNT DETAILS

| | | CONTACT INFORMATION |
|---|---|---|
| Account Name | DEPT OF ED/NAVIENT | PO BOX 9635 |
| Account # | 934655XXXXXXXXXXXXXXXX | WILKES BARRE, PA 18773 |
| Original Creditor | | (888) 272-5542 |
| Company Sold | | |
| Account Type | INSTALLMENT | |
| Date Opened | Mar 2012 | |
| Account Status | Open | |
| Payment Status | Past due 150 days | |
| Status Updated | May 2019 | |
| Balance | $7,025 | |
| Balance Updated | May 31, 2019 | |
| Original Balance | $15,783 | |
| Monthly Payment | $53 | |
| Past Due Amount | $318 | |
| Highest Balance | - | |
| Terms | 99 Months | |
| Responsibility | Individual | |
| Your Statement | | |
| Comments | Subscriber reports dispute resolved - consumer disagrees | |
| | Completed investigation of FCRA dispute - consumer disagrees | |

### PAYMENT HISTORY

**2019**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2018**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2017**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2016**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2015**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK    20+ Days Late
30 Days Late

---

*Summary*    Accounts (Open)    Public Records    Credit Score
Inquiries    Collections



C-7

JULIE ANNE CHINNOCK - Experian
Date of Report: Jun 18, 2019

experian.

**DEPT OF ED/NAVIENT**
**934655XXXXXXXXXXXXXXXXX**

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DEPT OF ED/NAVIENT |
| Account # | 934655XXXXXXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Aug 2013 |
| Account Status! | Open |
| Payment Status | Past due 150 days |
| Status Updated | May 2019 |
| Balance | $21,442 |
| Balance Updated | May 31, 2019 |
| Original Balance | $20,500 |
| Monthly Payment | $159 |
| Past Due Amount | $954 |
| Highest Balance | - |
| Terms | 145 Months |
| Responsibility | Individual |
| Your Statement | - |
| Comments | Subscriber reports dispute resolved - consumer disagrees<br>Completed investigation of FCRA dispute - consumer disagrees |

## CONTACT INFORMATION

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5542

## PAYMENT HISTORY

2019
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec
2018
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec
2017
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec
2016
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec
OK
120+ Days Late
90 Days Late

Summary | Accounts (Open) | Collections | Inquiries | Public Records | Credit Score

C-8

6/18/2019
https://usa.experian.com/#/print/experian/201906182157437062

JULIE ANNE CHINNOCK · Experian
Date of Report: Jun 18, 2019

 experian.



**DEPT OF ED/NAVIENT**
**934655XXXXXXXXXXXXXXXXX**

 Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DEPT OF ED/NAVIENT |
| Account # | 934655XXXXXXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | |
| Account Type | INSTALLMENT |
| Date Opened | May 2014 |
| Account Status! | Open |
| Payment Status | Past due 150 days |
| Status Updated | May 2019 |
| Balance | $21,442 |
| Balance Updated | May 31, 2019 |
| Original Balance | $20,500 |
| Monthly Payment | $159 |
| Past Due Amount | $954 |
| Highest Balance | - |
| Terms | 150 Months |
| Responsibility | Individual |
| Your Statement | |
| Comments | Subscriber reports dispute resolved - consumer disagrees |
| | Completed investigation of FCRA dispute - consumer disagrees |

### CONTACT INFORMATION

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5542

### PAYMENT HISTORY

**2019**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2018**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2017**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2016**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK
120+ Days Late
90 Days Late

C-9

6/18/2019                                   https://usa.experian.com/#/print/experian/201906182157437062

JULIE ANNE CHINNOCK - Experian
Date of Report: Jun 18, 2019

 experian.



**DEPT OF ED/NAVIENT**
934655XXXXXXXXXXXXXXXXX

 Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DEPT OF ED/NAVIENT |
| Account # | 934655XXXXXXXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Jan 2015 |
| Account Status! | Open |
| Payment Status | Past due 150 days |
| Status Updated | May 2019 |
| Balance | $21,737 |
| Balance Updated | May 31, 2019 |
| Original Balance | $20,500 |
| Monthly Payment | $159 |
| Past Due Amount | $954 |
| Highest Balance | - |
| Terms | 156 Months |
| Responsibility | Individual |
| Your Statement | - |
| Comments | Subscriber reports dispute resolved - consumer disagrees |
| | Completed Investigation of FCRA dispute - consumer disagrees |

### CONTACT INFORMATION

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5542

### PAYMENT HISTORY

**2019** — Jan Feb Mar Apr, May Jun Jul Aug, Sep Oct Nov Dec
**2018** — Jan Feb Mar Apr, May Jun Jul Aug, Sep Oct Nov Dec
**2017** — Jan Feb Mar Apr, May Jun Jul Aug, Sep Oct Nov Dec
**2016** — Jan Feb Mar Apr, May Jun Jul Aug, Sep Oct Nov Dec

OK
90 Days Late
120+ Days Late




C-10

6/18/2019
https://usa.experian.com/#/print/experian/201906182157437062

JULIE ANNE CHINNOCK - Experian
Date of Report: Jun 18, 2019





DEPT OF ED/NAVIENT
934655XXXXXXXXXXXXXXX

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DEPT OF ED/NAVIENT |
| Account # | 934655XXXXXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Jan 2015 |
| Account Status | Open |
| Payment Status | Past due 150 days |
| Status Updated | May 2019 |
| Balance | $4,998 |
| Balance Updated | May 31, 2019 |
| Original Balance | $11,535 |
| Monthly Payment | $35 |
| Past Due Amount | $215 |
| Highest Balance | - |
| Terms | 84 Months |
| Responsibility | Individual |
| Your Statement | - |
| Comments | Subscriber reports dispute resolved - consumer disagrees |
| | Completed investigation of FCRA dispute - consumer disagrees |

### CONTACT INFORMATION

PO BOX 9635
WILKES BARRE, PA 18773
(888) 272-5542

### PAYMENT HISTORY

**2019**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2018**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2017**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2016**
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK
90 Days Late
120+ Days Late

Summary ⟩ Accounts (Open) ⟩ Collections ⟩ Inquiries ⟩ Public Records ⟩ Credit Score

C-11

6/18/2019

https://usa.experian.com/#/print/equifax/201906182157437062

JULIE ANNE CHINNOCK - Equifax
Date of Report: Jun 18, 2019





**NAVIENT**
934655XXXXXXXXXXXXXX

 Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | NAVIENT |
| Account # | 934655XXXXXXXXXXXXXX |
| Original Creditor | |
| Company Sold | |
| Account Type | INSTALLMENT |
| Date Opened | Nov 2003 |
| Account Status | Open |
| Payment Status | At least 120 days or more than four payments past due |
| Status Updated | May 2019 |
| Balance | $165,202 |
| Balance Updated | May 31, 2019 |
| Original Balance | $0 |
| Monthly Payment | $1,267 |
| Past Due Amount | $7,610 |
| Highest Balance | $132,613 |
| Terms | M195M |
| Responsibility | Individual Account |
| Your Statement | |
| Comments | |

## CONTACT INFORMATION

PO BOX 9655
WILKES-BARRE, PA 18773-9655
(999) 999-9999

### PAYMENT HISTORY

**2019**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2018**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2017**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2016**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

**2015**
Jan Feb Mar Apr
May Jun Jul Aug
Sep Oct Nov Dec

OK   120+ Days Late
90 Days Late

Summary  Accounts (Open)  Collections  Inquiries  Public Records  Credit Score

C-12

https://usa.experian.com/#/print/equifax/201906182157437062

JULIE ANNE CHINNOCK - Equifax
Date of Report: Jun 18, 2019





**DEPT OF ED/NAVIENT**
**934655XXXXXXXXXXXXXX**



## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DEPT OF ED/NAVIENT |
| Account # | 934655XXXXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Mar 2012 |
| Account Status | Open |
| Payment Status | At least 120 days or more than four payments past due |
| Status Updated | Apr 2019 |
| Balance | $6,989 |
| Balance Updated | Apr 30, 2019 |
| Original Balance | $0 |
| Monthly Payment | $53 |
| Past Due Amount | $265 |
| Highest Balance | $15,783 |
| Terms | M 99M |
| Responsibility | Individual Account |
| Your Statement | |
| Comments | |

## CONTACT INFORMATION

PO BOX 9655
WILKES-BARRE, PA 18773-9655
(999) 999-9999

### PAYMENT HISTORY

**2019**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2018**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2017**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2016**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2015**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK          90 Days Late

---

Summary | Accounts (Open) | Collections | Inquiries | Public Records | Credit Score



6/18/2019                    https://usa.experian.com/#/print/equifax/201906182157437062

JULIE ANNE CHINNOCK - Equifax
Date of Report: Jun 18, 2019

 **EQUIFAX**



**DEPT OF ED/NAVIENT**
**934655XXXXXXXXXXXXXX**

 Open

| ACCOUNT DETAILS | | CONTACT INFORMATION |
|---|---|---|

| | | |
|---|---|---|
| Account Name | DEPT OF ED/NAVIENT | PO BOX 9655 |
| Account # | 934655XXXXXXXXXXXXXX | WILKES-BARRE, PA 18773-9655 |
| Original Creditor | - | (999) 999-9999 |
| Company Sold | - | |
| Account Type | INSTALLMENT | |
| Date Opened | Aug 2013 | |
| Account Status | Open | |
| Payment Status | At least 120 days or more than four payments past due | |
| Status Updated | Apr 2019 | |
| Balance | $21,353 | |
| Balance Updated | Apr 30, 2019 | |
| Original Balance | $0 | |
| Monthly Payment | $159 | |
| Past Due Amount | $795 | |
| Highest Balance | $20,500 | |
| Terms | M145M | |
| Responsibility | Individual Account | |
| Your Statement | | |
| Comments | | |

PAYMENT HISTORY

2019 — Jan Feb Mar Apr May Jun Jul Aug Sep Oct Nov Dec

2018 — Jan Feb Mar Apr May Jun Jul Aug Sep Oct Nov Dec

2017 — Jan Feb Mar Apr May Jun Jul Aug Sep Oct Nov Dec

2016 — Jan Feb Mar Apr May Jun Jul Aug Sep Oct Nov Dec

2015 — Jan Feb Mar Apr May Jun Jul Aug Sep Oct Nov Dec

☐ OK     ● 90 Days Late

Summary   Accounts (Open)   Collections   Inquiries   Public Records   Credit Score

C-14

6/18/2019

JULIE ANNE CHINNOCK - Equifax
Date of Report: Jun 18, 2019



**DEPT OF ED/NAVIENT**
**934655XXXXXXXXXXXXXX**



 Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DEPT OF ED/NAVIENT |
| Account # | 934655XXXXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | May 2014 |
| Account Status! | Open |
| Payment Status | At least 120 days or more than four payments past due |
| Status Updated | Apr 2019 |
| Balance | $21,353 |
| Balance Updated | Apr 30, 2019 |
| Original Balance | $0 |
| Monthly Payment | $159 |
| Past Due Amount | $795 |
| Highest Balance | $20,500 |
| Terms | M150M |
| Responsibility | Individual Account |
| Your Statement | |
| Comments | |

## CONTACT INFORMATION

PO BOX 9655
WILKES-BARRE, PA 18773-9655
(999) 999-9999

### PAYMENT HISTORY

| 2019 | | | |
|---|---|---|---|
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

| 2018 | | | |
|---|---|---|---|
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

| 2017 | | | |
|---|---|---|---|
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

| 2016 | | | |
|---|---|---|---|
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

| 2015 | | | |
|---|---|---|---|
| Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK         90 Days Late

C-15

6/18/2019

https://usa.experian.com/#/print/equifax/201906182157437062

JULIE ANNE CHINNOCK - Equifax
Date of Report: Jun 18, 2019





DEPT OF ED/NAVIENT
934655XXXXXXXXXXXXX

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | DEPT OF ED/NAVIENT |
| Account # | 934655XXXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Jan 2015 |
| Account Status! | Open |
| Payment Status | At least 120 days or more than four payments past due |
| Status Updated | Apr 2019 |
| Balance | $4,971 |
| Balance Updated | Apr 30, 2019 |
| Original Balance | $0 |
| Monthly Payment | $35 |
| Past Due Amount | $179 |
| Highest Balance | $11,535 |
| Terms | M 84M |
| Responsibility | Individual Account |
| Your Statement | |
| Comments | |

## CONTACT INFORMATION

PO BOX 9655
WILKES-BARRE, PA 18773-9655
(999) 999-9999

### PAYMENT HISTORY

**2019**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2018**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2017**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2016**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2015**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK          90 Days Late



C-16

6/18/2019

https://usa.experian.com/#/print/equifax/201906182157437062

JULIE ANNE CHINNOCK - Equifax
Date of Report: Jun 18, 2019



 DEPT OF ED/NAVIENT
934655XXXXXXXXXXXXX

 Open

**ACCOUNT DETAILS**

| | |
|---|---|
| Account Name | DEPT OF ED/NAVIENT |
| Account # | 934655XXXXXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | INSTALLMENT |
| Date Opened | Jan 2015 |
| Account Status! | Open |
| Payment Status | At least 120 days or more than four payments past due |
| Status Updated | Apr 2019 |
| Balance | $21,635 |
| Balance Updated | Apr 30, 2019 |
| Original Balance | $0 |
| Monthly Payment | $159 |
| Past Due Amount | $795 |
| Highest Balance | $20,500 |
| Terms | M156M |
| Responsibility | Individual Account |
| Your Statement | |
| Comments | |

**CONTACT INFORMATION**

PO BOX 9655
WILKES-BARRE, PA 18773-9655
(999) 999-9999

**PAYMENT HISTORY**

**2019**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2018**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2017**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2016**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

**2015**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec |

OK    90 Days Late

C-17